FILED IN CLERK'S OFFICE
U S D C   Atlanta

AUG 3   2006

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| PRESTON T. WEST, | :: | CIVIL ACTION NO. |
| Inmate # GDC 306073, EF 558337, | :: | 1:05-CV-0702-CC |
|     Plaintiff, | :: | |
| | :: | |
| v. | :: | |
| | :: | |
| DR. BILLY M. NICHOLS, | :: | PRISONER CIVIL RIGHTS |
| NURSE BARBARA BROCK, | :: | 42 U.S.C. § 1983 |
| CORRECTIONAL MEDICAL | :: | |
| SERVICES, et al., | :: | |
|     Defendants. | :: | |

## ORDER AND OPINION

Now before the Court are (1) Motion to Dismiss or Alternative Motion for

Summary Judgment of the Correctional Medical Services Defendants[1] [Doc. 25],

Plaintiff's Opposition thereto [Doc. 42], and the CMS Defendants' twice-docketed

---

[1] The Clerk of Court issued a notice to the parties that this pleading was to be treated as a motion for summary judgment. [Doc. 26.] The Correctional Medical Services (CMS) Defendants include the following unnamed Defendants designated in Plaintiff's complaint, all associated with the DeKalb County Jail (the Jail): (1) the Medical Company in charge of the Jail, (2) the Medical Director, (3) the Pill Call Nurse, and (4) the Intake Nurse. [See Doc. 13 at 1-2.] This Court previously dismissed all of the remaining Defendants named or designated in Plaintiff's complaint, except for two Augusta State Medical Prison (ASMP) officials, Dr. Nichols and Nurse Brock (the ASMP Defendants). [See Doc. 4.] The ASMP Defendants have filed a separate motion for summary judgment [Doc. 60], which the Court will address in a separate order after Plaintiff has had an opportunity to respond.

Reply [Docs. 43, 44]; (2) Plaintiff's Motion Compelling Discovery [Doc. 33], the CMS Defendants' Response thereto [Doc. 34], and Plaintiff's Opposition in reply [Doc. 48]; (3) Plaintiff's Motion for Protective Order [Doc. 48]; (4) Plaintiff's Request for Medical Records Under Seal Filed w/ the Clerk of Court's Office [Doc. 51], and the CMS Defendants' Response thereto [Doc. 52]; (5) Plaintiff's renewed Motion for Appointment of Counsel[2] [Doc. 53]; and (6) Plaintiff's Request for Copy of the Original Complaint [Doc. 54].

## I. FACTUAL AND PROCEDURAL BACKGROUND

In his complaint, filed pursuant to 42 U.S.C. § 1983, Plaintiff sets forth the following allegations. He was transferred from the ASMP to the Jail on January 4, 2005, for a court appearance, at which time he informed the Intake Nurse of his need for dialysis every other day, per doctor's orders, and for various medications to stabilize his blood pressure, including Labetalol 200 mg tablets (2 tablets twice daily), Cozaar 50 mg tablets (2 tablets once daily), and Nifedipine 60 mg tablets (1 tablet twice daily).[3] These medications, and others, were confiscated upon his intake

---

[2]Previously, this Court denied Plaintiff's motion for appointment of counsel without prejudice to renewal.  [See Doc. 30.]

[3]Plaintiff also describes his dosage for each medication as one tablet thrice daily for Labetalol, two tablets thrice daily for Cozaar, and one tablet thrice daily for

2

into the Jail, and he was told that the nurses at the Jail would provide him with his medications at "pill call." Nevertheless, throughout his entire stay at the Jail, he was "totally denied the above listed medications." [Doc. 1 ¶ IV, attach. at 5-6, & Ex. A (Pl.'s 1st Aff.) at 1-2.]

Plaintiff was taken to Grady Memorial Hospital (Grady) in Atlanta, Georgia, for dialysis on Wednesday, January 5, 2005, and on Friday, January 7, 2005, but was not taken to Grady on Monday, January 10, 2005, because, according to the Jail's duty sergeant, "they forgot about" Plaintiff. [Id. attach. at 5; Pl.'s 1st Aff. at 2-3.] Upon Plaintiff's return to the ASMP the next day, January 11, 2005, the intake nurses checked his blood pressure and shouted, "Why haven't you been taking your blood pressure medications." Plaintiff informed them that he had not received his medications at the Jail, and, within a matter of hours, at approximately 8:30 p.m., ASMP personnel provided those medications to him. [Id. attach. at 6-7.]

Plaintiff claims that, as a result of being deprived of his daily blood pressure medications while at the Jail and his regular dialysis treatments between January 7, 2005, and January 14, 2005, he suffered, and continues to suffer, from "dizziness, stiffness, swelling, weakness, [and] headaches." [Id. ¶ IV.] He also alleges that,

---

Nifedipine. [Doc. 1 attach. at 6.]

3

prior to the resumption of his medications and dialysis, "it was very obvious to see by the average person that [he] needed medical treatment." [Pl.'s 1st Aff. at 3.] Plaintiff seeks compensatory and punitive damages and an injunction requiring better care for dialysis patients in the Georgia prison system. [Id. ¶ V.]

Based on the foregoing, this Court allowed to proceed, as in any other civil action, Plaintiff's claim that the CMS Defendants had been deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, by depriving him of his blood pressure medications during his January 2005 detention at the Jail.[4] [See Doc. 4 at 7-8.] The Court concluded that Plaintiff had failed to state a claim of deliberate indifference against the CMS Defendants based on their alleged failure to provide dialysis treatment for Plaintiff on January 10, 2005. [See id.]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings and other documents on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a

---

[4]The Court also allowed a claim of deliberate indifference to proceed against the ASMP Defendants, which claim is not relevant to the instant motion for summary judgment. [See Doc. 4.]

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering a summary judgment motion, a court must "view the evidence and all factual inferences therefrom in the light most favorable" to the non-movant. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are implausible." Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (internal quotations omitted). Morever, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The movant bears the initial burden of demonstrating that it is entitled to summary judgment. Apcoa, Inc. v. Fidelity Nat'l Bank, 906 F.2d 610, 611 (11th Cir. 1990). It may do so by showing "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Once the movant has properly supported its motion, the non-movant must then "come forward with specific facts

5

showing that there is a *genuine issue for trial*," i.e., that the evidence is sufficient to support a jury verdict in its favor. Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (internal quotations omitted). See also Chanel, Inc. v. Italian Activewear of Florida, Inc., 931 F.2d 1472, 1477 (11th Cir. 1991) (stating that "the non-moving party must come forward with *significant, probative evidence*") (emphasis added). "[C]onclusory assertions . . . [without] supporting evidence are insufficient to withstand summary judgment." Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).[5]

A motion for summary judgment may be supported or opposed with "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." Fed. R. Civ. P. 56(c).[6] "As a general rule, the court may

---

[5]Nevertheless, "courts have been reluctant to apply" to pro se prisoners the Rule 56(e) requirement that a non-movant "cannot rely on his pleadings, but must file a response that includes other evidence." Lawrence v. Wiley, Civil Action No. 1:03-CV-2970, 2006 U.S. Dist. LEXIS 4917, at *15-*16 (N.D. Ga. Jan. 24, 2006). See also Gonzalez v. Long, 889 F. Supp. 639, 642 (E.D.N.Y. 1995) (allowing pro se prisoner additional time to respond to summary judgment motion, "mindful that *pro se* litigants should be given special latitude" in doing so, but noting that the "abject failure to comply with the requirements of Rule 56(e) and [the Court's local rule] would normally require the Court to grant" the summary judgment motion).

[6]This Court's Local Rules provide additional requirements. "A movant for summary judgment shall include with the motion and brief a separate, concise, numbered statement of the material facts to which the movant contends there is no

6

consider on a Rule 56 summary judgment motion any material that would be admissible or usable at trial." Property Mgmt. & Inv., Inc. v. Lewis, 752 F.2d 599, 604 n.4 (11th Cir. 1985) (assuming without deciding "that authenticity and completeness are among the evidentiary requirements of Rule 56"). See also Woods v. City of Chicago, 234 F.3d 979, 987-88 (7th Cir. 2000) (stating that Rule 56(e) "does not *require* that all supporting material be submitted in affidavit form,"[7] and

---

genuine issue to be tried. Each material fact must be numbered separately and supported by a citation to evidence proving such fact. The court will not consider any fact: (a) not supported by a citation to evidence (including page or paragraph number); (b) supported by a citation to a pleading rather than to evidence; (c) stated as an issue or legal conclusion; or (d) set out only in the brief and not in the movant's statement of undisputed facts." N.D. Ga., LR 56.1.B.(1). The response to the motion for summary judgment "shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts." N.D. Ga., LR 56.1.B.(2)a.(1). "This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1 B.(1)." N.D. Ga., LR 56.1.B.(2)a.(2).

[7]An affidavit "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence," and may be supported by "[s]worn or certified copies" of documents referred to in the affidavit. Fed. R. Civ. P. 56(e). An "unsworn declaration, certificate, verification, or statement" may be used in the place of a sworn affidavit to support or oppose a motion for summary judgment if the declaration "is subscribed by [the declarant], as true under penalty of perjury, and

7

stating further that a "court may consider any material that would be admissible or usable at trial, including properly authenticated and admissible documents or exhibits") (citation and internal quotations omitted).

## III. CONTENTIONS OF THE PARTIES

### A.   Plaintiff's discovery motions

On July 18, 2005, the CMS Defendants filed notice that they had provided Plaintiff with a copy of his medical records from the Jail. [Doc. 15.] On September 26, 2005, the CMS Defendants filed notices that they had responded to Plaintiff's first set of interrogatories and first set of requests for production of documents. [Docs. 22, 23.] On October 13, 2005, the CMS Defendants filed a request to file a certified copy of Plaintiff's medical records under seal, noting therein that they previously had provided Plaintiff with a copy of those records. [Doc. 25 attach.] On October 19, 2005, this Court granted the CMS Defendants' motion to file Plaintiff's medical records under seal. [Doc. 29.] They did so on October 31, 2005. [Doc. 38.]

On October 24, 2005, Plaintiff filed a motion seeking an order compelling "the defendants" to respond to his August 18, 2005 discovery requests, attaching thereto two "good faith" letters that he had written to "Defendants" requesting that they

dated." See 28 U.S.C. § 1746.

8

provide responses to his discovery requests. [Doc. 33 & attachs.] The CMS Defendants responded that (1) they previously had responded to all of Plaintiff's discovery requests, as revealed by their prior notices (described above), and (2) they would re-deliver those materials by certified mail to Plaintiff's ASMP address. [Docs. 34, 35.]

On December 15, 2005, Plaintiff filed his Opposition to Defendants' responses to his motion to compel discovery, alleging that, by not responding to his discovery requests in accordance with Fed. R. Civ. P. 33 and 34, Defendants "have brought about many questions regarding their responses to plaintiff's submitted Admissions." [Doc. 48 at 1.] Attached to the Opposition is a purported copy of Plaintiff's "First [Requests for] Admissions to the Defendants." [Id. Ex. A.] Plaintiff also seeks a protective order against the allegedly "extremely long harassing, unnecessary, unavailable discovery requests" that he has received from Defendants. [Doc. 48 at 1.] On July 12, 2006, in response to this Court's order, the CMS Defendants filed with the Court a copy of the interrogatories and requests for production of documents that Plaintiff had posed to them, along with their responses thereto. [Doc. 58 & attach.]

9

**B.**   **CMS Defendants' motion for summary judgment**

   **1.**   **The summary judgment motion**

   In their motion for summary judgment, the CMS defendants assert that during Plaintiff's detention at the Jail in January 2005, he received (1) "medically appropriate blood pressure medications, namely, Cozaar, Nifedipine, Clonidine and Labetolol[8] [sic]" and (2) "substantial treatment for all of his ailments." [Doc. 25 Supp. Br. at 2, 4; Statement of Material Facts ¶¶ 3-4; Doc. 28 (Warren Aff.) ¶¶ 4-5.] The CMS Defendants claim that Plaintiff's medical treatment at the Jail did not constitute deliberate indifference to any of his serious medical needs. [Doc. 25 Supp. Br. at 6-9.]

   Dr. Pamela Warren, who is employed at the Jail by Correctional Medical Services, Inc., reviewed Plaintiff's medical records from the Jail and the "true and correct summary of those records [that] is attached and incorporated into [her] affidavit."[9] [Warren Aff. ¶¶ 1-3.] Dr. Warren concluded that Plaintiff "received

---

   [8]Apparently, the correct spelling for this drug is Labetalol.

   [9]Although it is an open question whether this "true and correct summary" is admissible into evidence pursuant to Fed. R. Evid. 1006, the relevant facts contained in the summary are supported by Plaintiff's actual medical records, which are admissible pursuant to Fed. R. Evid. 803(6), as discussed infra.

10

medically appropriate blood pressure medications" during his detention at the Jail in January 2005, noting that Plaintiff's "refusal of dialysis" on January 4, 2005, may have worsened his blood pressure. [Id. ¶¶ 4-5.] According to the records summary attached to Dr. Warren's affidavit, Plaintiff received no blood pressure medications at the Jail on the day of his arrival, January 4, 2005; nor did he receive those medications on the morning of January 5, 2005, due to his early morning transport to Grady Hospital for dialysis. However, on each day thereafter, from January 6, 2005, through January 10, 2005, Plaintiff received Clonidine, Nifedipine, Cozar [sic], and Labetolol [sic] at least once daily. On January 11, 2005, the day of his departure from the Jail, Plaintiff's personal medications were returned to him. [Id. Ex. A.] The records summary indicates that the dialysis scheduled for January 10, 2005, was "postponed by Grady until [the] 12th," by which time Plaintiff had returned to the ASMP. [Id.]

### 2.    Plaintiff's response

In response to the CMS Defendants' motion for summary judgment, Plaintiff asserts that, while housed at the Jail, he "was totally deprived of his vital blood pressure medications Cozaar 50 mg, Labetalol 200 mg, Nifedipine 60 mg and others," which were confiscated upon his intake into the Jail. [Doc. 42 at 2.]

11

Plaintiff claims that delays both in his blood pressure medication and in his dialysis caused him much discomfort and pain, and also caused his "creatinine range level" to increase from 6.2 to 19.9, as reported by ASMP medical personnel on January 14, 2005, thereby greatly endangering his health and even his life. [Id. at 2-3, 5, 7 & attach. (Pl.'s 2nd Aff.) at 1.]  Plaintiff denies ever having refused dialysis, either at the Jail or at Grady.  [Id. at 3, 5 & Pl.'s 2nd Aff. at 1.]

### 3.    CMS Defendants' reply

In reply, the CMS Defendants state that "Plaintiff's own [Jail] medical record, verified by his numerous signatures, is alone enough to show that Plaintiff has suffered no constitutional deprivation of medical treatment, including blood pressure medications." [Doc. 43 at 3.]    The CMS Defendants have filed, under seal, Plaintiff's medical records from the Jail.[10] [Doc. 38.] The records show that Plaintiff

---

[10]As noted supra, Rule 56 generally allows a court to consider "any material that would be admissible or usable at trial." See Property Mgmt. & Inv., Inc., 752 F.2d at 604 n.4.  Business records "of regularly conducted activity," including diagnoses "made at or near the time by . . . a person with knowledge," are admissible if the records were compiled as "the regular practice" of the business and "kept in the course of a regularly conducted business activity," as shown either by the testimony of the records custodian or by a certification that complies with Fed. R. Evid. 902(11), unless there is some indication that the records lack trustworthiness.  Fed. R. Evid. 803(6). The CMS Defendants have submitted a signed and notarized copy of a "Medical Records Certificate of Authentication," stating that the Plaintiff's medical records from the Jail "are maintained under the care, custody and control of

12

arrived at the Jail on January 4, 2005, at 10:23 a.m., and a medical screening was performed, notations were made concerning the dozen or so medications that Plaintiff was carrying with him, those medications were placed in storage pending Plaintiff's return to the ASMP, and the paperwork was completed to replace them with identical medications to be distributed by Jail personnel. [Id. "Physician's Orders" & "Inmate Personal Medication Log."] Plaintiff was taken to Grady on January 4, 2005, returned to the Jail shortly after midnight, and then returned to Grady at 8:30 a.m. on January 5, 2005, where he remained much of the day for dialysis treatment. [Id. "Interdisciplinary Progress Notes."]

At 9:30 p.m. on January 5, 2005, Plaintiff complained that his blood pressure was high because he had not been given his medications. His blood pressure measured 180 over 90. He was given 100 mg of Cozaar, and the duty nurse made a notation to continue monitoring his condition. At 3:20 a.m. on January 6, 2005,

the Director of Medical Records, and kept in the ordinary course of business of this facility," i.e., the Jail's Medical Unit. [See Doc. 38.] It is undisputed that these medical records are authentic and trustworthy. Accordingly, the Court concludes that these records "would be admissible" at trial if properly certified pursuant to Fed. R. Evid. 902(11), and the Court will consider them in ruling on the instant motion for summary judgment. See United States v. Arias-Izquierdo, 449 F.3d 1168, 1183 (11th Cir. 2006) (noting that "[t]he touchstone of admissibility under [Rule 803(6)] is reliability, and a trial judge has broad discretion to determine the admissibility of such evidence").

13

Plaintiff complained that he was not well and that he had not received his morning medication because he was "at Grady getting dialysis." His blood pressure measured 200 over 120.  At 3:35 a.m., pursuant to orders from the Jail's on-call provider, Plaintiff received 0.3 mg of Clonidine.  At 4:35 a.m., his blood pressure measured 160 over 100, and he stated that he felt "better now."  [Id.]

The extensive notes on Plaintiff's medical condition, kept by the Jail's duty nurses for the remainder of his stay there, indicate that he suffered no further discomfort or severely elevated blood pressure, except for headache or dizziness late in the evening of January 10, 2005.  [Id.]  As noted previously, on each day from January 6, 2005, through January 10, 2005, Plaintiff received, in addition to numerous other medications, the following blood pressure medications: Cozaar, Nifedipine, Clonidine, and Labetalol.  [Id. "Medication Administration Record."] At 4:20 a.m. on January 11, 2005, Plaintiff's personal medications were returned to him in preparation for his departure from the Jail.  [Id. "Interdisciplinary Progress Notes."]

14

## IV. DISCUSSION

### A.   Plaintiff's discovery motions

#### 1.   Motion to compel discovery

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "[A] district court can deny a motion to compel further discovery if it concludes that the questions are irrelevant." Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999). "[A] district court is allowed a range of choice" in deciding whether to grant or deny a motion to compel discovery responses, which decision will stand unless it constitutes an abuse of discretion. Holloman v. Mail-Well Corp., 443 F.3d 832, 837 (11th Cir. 2006) (internal quotations omitted).

The Court has reviewed all of Plaintiff's discovery requests that are relevant to the CMS Defendants' motion for summary judgment. [See Docs. 48, 58.] The Court concludes that the CMS Defendants have fully responded to all of those requests that are "reasonably calculated to lead to the discovery of admissible evidence." See Fed. R. Civ. P. 26(b)(1).

15

### 2.     Motion for a protective order

"Upon motion by a party . . ., accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c). Plaintiff, however, has not shown good cause for a protective order on his behalf.  [See Doc. 48 Ex. B.]

### B.     CMS Defendants' motion for summary judgment

#### 1.     The law of deliberate indifference

To prevail on a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995). The Eighth Amendment prohibits indifference to a serious medical need so deliberate that it "constitutes the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (internal quotations omitted). To demonstrate deliberate indifference, a plaintiff must show both "an objectively

16

serious medical need" and the defendant's subjective knowledge of, and more than negligent disregard of, that need. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003). See also Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994) (noting that "a 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002).

A plaintiff may establish deliberate indifference by showing that a prison official failed or refused to provide care for his serious medical condition, delayed care "even for a period of hours," chose "an easier but less efficacious course of treatment," or provided care that was "grossly inadequate" or "so cursory as to amount to no treatment at all." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). See Hill, 40 F.3d at 1187 (stating that "[d]elay in access to medical attention can violate the Eighth Amendment when it is tantamount to unnecessary and wanton infliction of pain") (citation and internal quotations omitted); Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) (stating that "a deliberate delay on the order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim").

17

Negligence, however, even rising to the level of medical malpractice, does not constitute deliberate indifference. McElligott, 182 F.3d at 1254. See also Hinson v. Edmond, 192 F.3d 1342, 1345 (11th Cir. 1999) (noting that it is well-settled that "medical malpractice–negligence by a physician–is insufficient to form the basis of a claim for deliberate indifference"), amended by 205 F.3d 1264 (11th Cir. 2000); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (noting that "[m]ere negligence in diagnosing or treating a medical condition is an insufficient basis" for a deliberate indifference claim).

### 2.    **Analysis**

The medical records from the DeKalb County Jail amply demonstrate that the CMS Defendants were not deliberately indifferent to Plaintiff's serious medical needs. Plaintiff experienced discomfort on the evening of January 5, 2005, arising from his failure to receive his blood pressure medications earlier that day, apparently due to his transport to Grady Hospital for dialysis treatment prior to pill call at the Jail. When Plaintiff complained of discomfort that evening, and again early on the morning of January 6, 2005, he received blood pressure medication almost immediately in each instance and eventually he began to feel better. Apparently, he only complained of pain or discomfort once more during the remainder of his stay

18

at the Jail, on the eve of his departure. At worst, Plaintiff's failure to receive his blood pressure medications on the morning of January 5, 2005, the day after his arrival at the Jail, can be attributed to the inadvertence of an otherwise extremely attentive medical staff, not to the staff's desire to inflict unnecessary pain wantonly on Plaintiff. See Estelle, 429 U.S. at 104.

Plaintiff alleges in his complaint that he received no blood pressure medication while at the Jail in January 2005. [Doc. 1 ¶ IV & attach. at 5-6.] To prevail on a claim of deliberate indifference at trial, Plaintiff would be required to prove this allegation by a preponderance of the evidence. However, as noted above, the CMS Defendants have come forward with extensive admissible evidence that this allegation is false and that Plaintiff received a great deal of medical attention at the Jail, including repeated dosages of his blood pressure medications and around-the-clock monitoring of his medical condition. [See Docs. 28, 38.] In so doing, the CMS Defendants have "sufficiently supported [their] motion for summary judgment." See Chanel, Inc., 931 F.2d at 1477. Therefore, in order to avoid summary judgment, Plaintiff "must come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." Id. Instead, Plaintiff has merely reiterated his unsupported claim that he "was totally deprived of his vital blood pressure

19

medications Cozaar 50 mg, Labetalol 200 mg, Nifedipine 60 mg and others," which were confiscated upon his intake into the Jail. [Doc. 42 at 2.] This "conclusory allegation" is insufficient to avoid summary judgment for the CMS Defendants.[11] See Holifield, 115 F.3d at 1564 n.6.

## V. CONCLUSION

For the foregoing reasons –

Motion to Dismiss or Alternative Motion for Summary Judgment of the Correctional Medical Services Defendants [Doc. 25], construed as a motion for summary judgment, is **GRANTED**, and the CMS Defendants are **DISMISSED** from this action (see note 1, supra, for a list of the CMS Defendants);

---

[11]Furthermore, Plaintiff's claim that his medications were "confiscated" on January 4, 2005, is not in dispute and does not create a genuine issue for trial. Plaintiff's own medications were replaced with identical ones distributed by Jail personnel, and, apparently, authorized for distribution on the very next day, January 5, 2005. Moreover, the "dispute" over whether Plaintiff declined dialysis on January 4, 2005, is not material, because Plaintiff received dialysis on the very next day and has not claimed any ill effects from the lack of dialysis treatment on January 4, 2005. See Anderson, 477 U.S. at 247-48. In any event, this Court previously ruled that Plaintiff had not stated a claim against the CMS Defendants with respect to the alleged delay in his dialysis treatment, and Plaintiff has offered no evidence in the meantime to persuade the Court otherwise.

20

Plaintiff's Motion Compelling Discovery [Doc. 33] and Motion for Appointment of Counsel [Doc. 53] are **DENIED**, subject to renewal pending the disposition of the ASMP Defendants' motion for summary judgment;

Plaintiff's Motion for Protective Order [Doc. 48] and Request for Medical Records Under Seal [Doc. 51] are **DENIED**; and

Plaintiff's Request for Copy of the Original Complaint [Doc. 54] is **GRANTED**, and the Clerk of Court is **DIRECTED** to send Plaintiff a copy of his original complaint with attachments [Doc. 1].

**IT IS SO ORDERED**, this 3rd day of August, 2006.

CLARENCE COOPER
UNITED STATES DISTRICT JUDGE

21

AO 72A
(Rev 8/82)